IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| CECIL MAX-GEORGE, (TDCJ-CID #1649987) | § § § | |
| Plaintiff, | § § | |
| vs. | § § | CIVIL ACTION H-10-4692 |
| ADRIAN GARCIA, *et al.,* | § § | |
| Defendants. | § | |

**MEMORANDUM AND OPINION**

Cecil Max-George, an inmate of the Texas Department of Criminal Justice - Correctional Institutions Division, filed this suit in November 2010, alleging denial of access to the courts, denial of an adequate grievance procedure, and retaliation. Max-George, proceeding *pro se* and *in forma pauperis*, sued Adrian Garcia, the Sheriff of Harris County; Russell Smith, a sergeant in the Sheriff's Department; and (fnu) Klgage, a member of the grievance board. Based on a careful review, this court concludes that Max-George's claims lack merit. This case is dismissed and final judgment is entered separately, for the reasons explained below.

**I.     Background**

During the period at issue, Max-George was confined at the Harris County Jail ("HCJ") waiting to be tried for possession of marijuana in Cause Number 1246004, pending in the 232nd Judicial District Court of Harris County, Texas. He was assisting his court-appointed attorney, Ray Castro, in the defense. Because the HCJ did not provide access to photocopying equipment, Max-George prepared documents and sent them to his cousin, Elvino Taylor, for copying and mailing. Max-George often mailed documents using other inmates' names.

Max-George filed a grievance alleging that HCJ personnel interfered with his legal mail. In the course of investigating Max-George's grievance, Sergeant Smith, the mail-room supervisor, told Max-George that legal correspondence could be tracked only if it was sent by certified mail. Max-George told Smith that the legal mail he was expecting from his family was not sent by certified mail.

Max-George alleges that Taylor helped him file a federal civil-rights lawsuit on March 26, 2010 against the state-court judge presiding over his criminal case. Federal court records show that Civil Action Number 4:10-1215 was filed on April 12, 2010. It was stayed on May 19, 2010 pending the completion of the state criminal proceedings.

On April 6, 2010, Taylor sent Max-George a package containing copies of the civil suit in Civil Action Number 4:10-1215, legal documents relating to his business, pictures of his warehouse after his arrest, motions filed in the state trial court, and a copy of his business card.[1] On April 12, 2010, Max-George learned from Taylor that the HCJ had returned the package on the basis that it contained contraband. Max-George instructed Taylor to remail the package to him using his mother's name and to label the package "legal mail."

---

[1] Max-George describes the documents as follows:

(1)  Harris County DBA business name registration for Adrienne Construction & Contracting;
(2)  State of Texas Business Sales Permit for Adrienne Construction & Contracting;
(3)  Dunn & Bradstreet business registration for Adrienne Construction & Contracting;
(4)  business card for Adrienne Construction & Contracting;
(5)  purchase invoice from Direct Supply;
(6)  a hand-drawn floor plan of Adrienne Construction & Contracting;
(7)  different pictures of the inside and outside views of Adrienne Construction & Contracting; and
(8)  Clerk's Docket of filed motions for Cause Nos. 1246002, 1246003, and 1246004.

Max-George filed another grievance alleging interference with his legal mail.  On April 16, 2010, Smith again explained that the package could not be tracked unless it was sent by certified mail.  Max-George received the legal package on April 20, 2010.  He filed a complaint with the Internal Affairs Department and requested a full investigation into the charge that the mail room tampered with his legal mail.

On April 27, 2010, Max-George waived his right to counsel and elected to represent himself in his criminal case.  On May 12, 2010, Max-George instructed Taylor to send another set of his business documents, pictures of his warehouse after the arrest, a business card, and copies of motions.  Max-George needed the documents to present as part of his defense in the state criminal trial on May 24, 2010 because he had filed the first set in the federal court with the complaint in Civil Action Number 4:10-1215.

On May 17, 2010, Taylor advised Max-George that he had sent the requested material by overnight mail.  Max-George filed a grievance because he never received the package.  On May 27, 2010, Smith again advised Max-George that the package could not be tracked if not sent by certified mail.

On June 3, 2010, Max-George was convicted in the state court of possession of marijuana, sentenced to a 20-year prison term, and assessed a $5,000.00 fine.  On June 21, 2010, Max-George prepared a motion for new trial and a motion for arrest of judgment to be filed in his criminal case.  He sent them to Taylor using his cellmate's name, Marcus Mills.  On June 25, 2010, Max-George learned that Taylor never received the motions.  On June 28, 2010, Mills spoke to Max-George's mother on the telephone about the missing package.  Max-George filed a grievance over the missing mail.  Max-George was able to file his motion for new trial and motion to alter judgment in his state-

court case on June 30, 2010. Online Harris County court records show that from April to June 2010, Max-George filed 36 *pro se* motions in his state-court case, Cause No. 1246004. Max-George was transferred to the TDCJ-CID on July 12, 2010.

In this lawsuit, Max-George seeks "declaratory damages" in the amount of $175,000.00; compensatory damages in the amount of $175,000.00; and punitive damages in the amount of $200,000.00. He also seeks an injunction to compel the HCJ to investigate all grievances filed by inmates.

## II.     The Standard of Review

Under 28 U.S.C. § 1915A, federal courts are authorized to review, before docketing, if feasible, or in any event as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. The court must dismiss any part of the complaint that is frivolous, malicious, or fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. A complaint is frivolous if it lacks an arguable basis in law or fact. *See Denton v. Hernandez,* 504 U.S. 25, 31 (1992); *Richardson v. Spurlock,* 260 F.3d 495, 498 (5th Cir. 2001) (citing *Siglar v. Hightower,* 112 F.3d 191, 193 (5th Cir. 1997)). "A complaint lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist." *Davis v. Scott,* 157 F.3d 1003, 1005 (5th Cir. 1998) (quoting *McCormick v. Stalder,* 105 F.3d 1059, 1061 (5th Cir. 1997)).

## III.    The Claim of Denial of Access to the Courts

Prisoners have a constitutional right to access the courts. *Bounds v. Smith,* 430 U.S. 817, 821 (1977); *Jones v. Greninger,* 188 F.3d 322, 325 (5th Cir. 1999). This is not "an abstract, freestanding

right to a law library or legal assistance." *Lewis v. Casey,* 518 U.S. 343, 351 (1996).  Instead, "meaningful access to the courts is the touchstone." *Id.* (internal quotation marks and citation omitted).  To prevail on a claim of denial of access to courts, a prisoner must show actual injury. *Id.* at 349-52; *see also Christopher v. Harbury,* 536 U.S. 403, 415 (2002).  "[B]efore a prisoner may prevail on a claim that his constitutional right of access to the courts was violated, he must demonstrate 'that his position as a litigant was prejudiced by his denial of access to the courts.'" *McDonald v. Steward,* 132 F.3d 225, 230-31 (5th Cir. 1998) (citation omitted); *see also Lewis v. Casey,* 518 U.S. 343, 351 (1996).

Access-to-courts claims fall into two categories.  One category is claims that "systemic official action frustrates a plaintiff or plaintiff class in preparing and filing suits at the present time," but the suit can be pursued "once the frustrating condition has been removed."  The second category is claims of "specific cases that cannot be tried (or tried with all material evidence), no matter what official action may be in the future." *Christopher v. Harbury,* 536 U.S. 403, 413-14 (2002). Whether the claim "turns on a litigating opportunity yet to be gained or an opportunity already lost, the very point of recognizing any access claim is to provide some effective vindication for a separate and distinct right to seek judicial relief for some wrong." *Id.* at 414-15.  This claim is in the second category.

A claim for deprivation of the constitutional right of access to the courts must set forth in the complaint: (1) "the underlying cause of action, whether anticipated or lost"; and (2) "the official acts frustrating the litigation." *Id.*  Because the access-to-courts right is ancillary to the underlying claim, that claim is an element that must be described in the complaint as though it were being independently pursued.  When, as here, the access claim looks backward, the complaint must identify

a remedy.  The plaintiff must describe the predicate claim well enough to apply the "nonfrivolous"

test and to show that the "arguable" nature of the underlying claim is more than hope.  *Harbury*, 536

U.S. at 416.

Max-George complains that the defendants interfered with his legal mail and that, as a result,

he was not allowed to present exculpatory evidence at his criminal trial.  Construed liberally, Max-

George complains that his right to self-representation under *Faretta v. California,* 422 U.S. 806, 819,

836 (1975), was violated.[2]  Max-George acknowledges that a lawyer was appointed to serve as stand-

by counsel during his trial.  (Docket Entry No. 19, Plaintiff's More Definite Statement, p. 15).

Under *Heck v. Humphrey,* 512 U.S. 477, 486-87 (1994), the court must dismiss a civil rights

suit brought under 42 U.S.C. § 1983, if success in that suit would necessarily imply the invalidity

of the plaintiff's conviction or sentence, unless the plaintiff demonstrates that the conviction or

sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state

tribunal authorized to make such a determination, or called into question by a federal court's

issuance of a writ of habeas corpus under 28 U.S.C. § 2254.  In response to this court's order for a

more definite statement, Max-George described how he was harmed by the alleged interference with

his legal mail:

> I was harmed, because I was prevented and unable to prosecute my
> defense in proving that I was the owner of the business; that I had
> been living in my business for several months; and that the front of
> my business was well illuminated from the spotlight above the door
> of my business, therefore, there was no need for me to search another
> persons vehicle with a flashlight, as claimed by the State.  However,

---

[2] In *Faretta v. California,* the Supreme Court held that a defendant has a Sixth Amendment right
to represent himself if he knowingly and intelligently chooses to forego the assistance of counsel. 422 U.S.
806, 819, 836 (1975).

subject to my initial complaint under 42 U.S.C. § 1983, I state the
above only for the purpose of the Court's understanding and not for
the purpose to impinge upon my conviction.

(Docket Entry No. 19, Plaintiff's More Definite Statement, p. 10).

In its order for more definite statement, this court asked the following interrogatory: "(24)

Are you claiming that these documents were necessary for your defense?  If so, explain how each

item was relevant to your defense." (Docket Entry No. 18, p. 3).  Max-George responded:

With respect to the Court, I respectfully decline to answer this
question until further instructed from the Court to do so.  Even
though I am prepared to answer this question in the affirmative, I do
not believe this is the proper forum to present this claim under the
strict guidance of *Skinner v. Switzer*, 562 U.S. ____ (2011) [March 7,
2011], for the limited purpose and for the Court's understanding, I am
claiming "denial of access to present material evidence to the trial
court or the opportunity thereof" which the Court will see as
evidenced from the mailings.

(Docket Entry No. 19, Plaintiff's More Definite Statement, p. 14).

The court then asked: "(25) Are you claiming that if you had been able to present these items

at your trial, the outcome of your trial would have been different and that you would not have been

convicted of possession of marijuana, four ounces to five pounds, in cause number 1246004?"

(Docket Entry No. 18, p. 3).  Max-George responded, "No, not in this suit." (Docket Entry No. 19,

Plaintiff's More Definite Statement, p. 14).

In *Skinner*, the Supreme Court summarized the holding of *Heck*, as follows:

When may a state prisoner, complaining of unconstitutional
state action, pursue a civil rights claim under § 1983, and when is
habeas corpus the prisoner's sole remedy?  This Court has several
times considered that question.  Pathmarking here is *Heck v.
Humphrey*, 512 U.S. 477, 114 S. Ct. 2364, 129 L. Ed.2d 383 (1994).
Plaintiff in that litigation was a state prisoner serving time for
manslaughter.  He brought a § 1983 action for damages, alleging that

he had been unlawfully investigated, arrested, tried, and convicted. Although the complaint in *Heck* sought monetary damages only, not release from confinement, we ruled that the plaintiff could not proceed under § 1983. Any award in his favor, we observed, would "necessarily imply" the invalidity of his conviction. *See id.,* at 487, 114 S. Ct. 2364. When "a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence," the Court held, § 1983 is not an available remedy. *Ibid.* "But if . . . the plaintiff's action, even if successful, will *not* demonstrate the invalidity of [his conviction or sentence], the [§ 1983] action should be allowed to proceed. . . ." *Ibid.* We summarized the relevant case law most recently in *Wilkinson v. Dotson,* 544 U.S. 74, 125 S. Ct. 1242, 161 L. Ed.2d 253 (2005). That case involved prisoners who challenged the constitutionality of administrative decisions denying them parole eligibility. They could proceed under § 1983, the Court held, for they sought no "injunction ordering . . . immediate or speedier release into the community," *id.* at 82, 125 S. Ct. 1242, and "a favorable judgment [would] not 'necessarily imply the invalidity of [their] conviction[s] or sentence[s],'" *ibid.* (quoting *Heck,* 512 U.S., at 487, 114 S. Ct. 2364; first alteration added).

Measured against our prior holdings, Skinner has properly invoked § 1983. Success in his suit for DNA testing would not "necessarily imply" the invalidity of his conviction. While test results might prove exculpatory, that outcome is hardly inevitable; as earlier observed, see *supra,* at 1293 – 1294, results might prove inconclusive or they might further incriminate Skinner. See *Nelson v. Campbell,* 541 U.S. 637, 647, 124 S. Ct. 2117, 158 L. Ed.2d 924 (2004) ("[W]e were careful in *Heck* to stress the importance of the term 'necessarily.'").

*Skinner v. Switzer,* 131 S. Ct. 1289, 1298-99 (2011).

As noted above, Max-George previously filed a federal lawsuit against the state-court judge who was presiding over the state criminal trial, along with four other defendants. (Civil Action Number 4:10-1215.) In administratively closing that case because the state case was pending, the federal court stated:

Max-George has been charged in state court with possession of marijuana and being a felon in possession of a weapon. Max-George's allegations would, if true, necessarily implicate the validity

of these charges and any potential convictions. *See Hudson v. Hughes*, 98 F.3d 868, 872-73 (5th Cir. 1996) (holding that allegations of excessive force and false arrest are not cognizable under the doctrine in *Heck* if a successful civil rights claim would call into question the validity of the plaintiff's conviction); *see also Sappington v. Bartee*, 195 F.3d 234 (5th Cir. 1999) (holding that *Heck* bars a civil rights claim for excessive force and false arrest where the plaintiff has been convicted of assaulting an officer).

. . .

The Supreme Court has explained that if a plaintiff files a false arrest claim before he has been convicted (or files any other claim related to rulings that will likely be made in a pending or anticipated criminal trial), it is within the power of the district court, and in accord with common practice, to stay the civil action until the criminal case or the likelihood of a criminal case is ended. *Wallace v. Kato*, 549 U.S. 384, 393-94 (2007). If the plaintiff is ultimately convicted, and if the stayed civil suit would impugn that conviction, *Heck* will require dismissal; otherwise, the civil action will proceed, absent some other bar to suit. *Wallace*, 549 U.S. at 394 (citing *Edwards v. Balisok*, 520 U.S. 641, 649 (1997)); *Heck*, 512 U.S. at 487.

Because Max-George's pleadings reflect that his criminal cases remain pending, the Court must stay and close this civil case until his state court proceedings are completed.

*Max-George v. Keel*, Civil Action Number 4:10-1215, 2010 WL 2010876, at **2-4 (S.D. Tex. May 19, 2010).

From his answers to this court's questions, it appears that Max-George is trying to avoid another dismissal under *Heck v. Humphrey*, 512 U.S. at 486-87. Although Max-George alleges that jail officials tampered with his legal mail, and, as a result, he was unable to present favorable evidence at his trial, he is reluctant to describe how the documents he did not receive in the mail would have altered the outcome of his criminal trial for this would implicate the invalidity of his conviction. Instead, he noted that "subject to my initial complaint under 42 U.S.C. § 1983, I state

the above only for the purpose of the Court's understanding and not for the purpose to impinge upon my conviction." (Docket Entry No. 19, Plaintiff's More Definite Statement, p. 10).

In both his original complaint and his more definite statement, Max-George alleges that he was not allowed to present favorable evidence during his criminal trial and seeks damages and an injunction for his wrongful conviction. Success in this suit would necessarily implicate the validity of his conviction in Cause Number 1246004, and inevitably affect the duration of his confinement. *See Hamilton v. Lyons,* 74 F.3d 99, 103 (5th Cir. 1996) (a judgment in a federal civil rights case that the defendant altered and destroyed evidence relevant to the charges against the plaintiff would necessarily imply the invalidity of the conviction and sentence); *see Loden v. Hayes*, 208 Fed. App'x 356, 2006 WL 3539160 (5th Cir. 2006) (finding that a claim that a lack of legal materials affected the criminal trial was not cognizable in a § 1983 proceeding because of the *Heck v. Humphrey* bar). Under *Heck,* Max-George must demonstrate that his conviction and sentence have been reversed, invalidated, or expunged before he can bring this § 1983 suit. 512 U.S. at 486-87. Max-George cannot make such showing. Max-George's claims challenging his conviction for possession of marijuana are "legally frivolous" within the meaning of §§ 1915(e)(2) and 1915A(b). *Hamilton v. Lyons,* 74 F.3d 99, 102-103 (5th Cir. 1996) ("A § 1983 claim which falls under the rule in *Heck* is legally frivolous unless the conviction or sentence at issue has been reversed, expunged, invalidated, or otherwise called into question."). Max-George's claims are dismissed without prejudice to them being reasserted when the *Heck* conditions are met.

Alternatively, even if Max-George's claim was not barred by *Heck,* it lacks merit. Max-George alleges that he was unable to present favorable evidence at his trial because HCJ officials interfered with his legal mail. In an effort to avoid a dismissal under *Heck*, he stops short of

10

claiming that the evidence he wished to present would have altered the outcome at trial.   Max-George has failed to demonstrate an actual legal injury stemming from the defendants' unconstitutional conduct.  *See Clemons v. Monroe,* 423 Fed. App'x 362, 2011 WL 1497074 (5th Cir. 2011) ("although interference with prison mail that prevents an inmate from 'prepar[ing] and transmit[ting] a necessary legal document to a court' does violate an inmate's constitutionally protected right of access to the courts, *see id.* at 825–26, [the inmate] has failed to demonstrate an actual legal injury stemming from the defendants' unconstitutional conduct, that is, he has failed to demonstrate that he was prevented from raising a meritorious legal issue.").

Furthermore, Max-George admitted that he routinely sent legal correspondence under the names of fellow inmates and that his family did not always send his mail by certified mail.  Max-George's own pleadings show that the HCJ cannot track incoming mail unless it is sent by certified mail.

Max-George also claims that he was unable to file his motion for new trial and motion to alter judgment.   Online records show that he did file these motions on June 30, 2010.   *See* http\\www.hcdistrictclerk.com.  Online records reveal that from April to June 2010, Max-George filed 36 *pro se* motions in Cause Number 1246004.

Max-George fails to specify, either in his complaint or his more definite statement, what if any claims he is or was unable to litigate.  Max-George has not made the necessary showing that his position as a litigant was prejudiced.  His claim lacks merit and is dismissed.

## IV.    The Retaliation Claim

Prison officials may not retaliate against an inmate because that inmate exercised his right of access to the courts or complained to a supervisor about an officer's misconduct.  *Woods v.*

*Smith,* 60 F.3d 1161, 1164 (5th Cir. 1995), *cert. denied,* 516 U.S. 1084 (1996). A prisoner's retaliation claims are carefully reviewed. *Woods,* 60 F.3d at 1166 (citing *Adams v. Rice,* 40 F.3d 72, 74 (4th Cir. 1994), *cert. denied,* 514 U.S. 1022 (1995)). To prevail on a retaliation claim, a prisoner must show: (1) a specific constitutional right; (2) the defendant's intent to retaliate against the prisoner for exercising that right; (3) a retaliatory or adverse act; and (4) causation. *McDonald v. Steward,* 132 F.3d 225, 231 (5th Cir. 1998). Causation requires a showing that "but for the retaliatory motive the complained of incident . . . would not have occurred." *Johnson v. Rodriguez,* 110 F.3d 299, 310 (5th Cir. 1997) (quoting *Woods,* 60 F.3d at 1166), *cert. denied,* 522 U.S. 995, 118 S. Ct. 559 (1997). "The relevant showing in such cases must be more than the prisoner's personal belief that he is the victim of retaliation." *Johnson v. Rodriguez,* 110 F.3d at 310 (internal quotation marks omitted). "The inmate must produce direct evidence of motivation, or the more probable scenario, allege a chronology of events from which retaliation may be plausibly inferred." *Woods v. Smith,* 60 F.3d at 1166 (internal quotation marks omitted).

Max-George asserts that the defendants retaliated against him for filing grievances by interfering with his legal mail. (Docket Entry No. 1, Complaint, pp. 3-4). Max-George has alleged a specific constitutional right: his First Amendment right to file grievances was violated. But he has not alleged or shown the defendant's intent to retaliate against the prisoner for exercising that right or that, but for the retaliatory motive, he would have received all correspondence from his family. Max-George cannot make this showing. Though HCJ officials repeatedly informed him that they could only track his legal mail if it was sent by certified mail, Max-George concedes that his family did not send his legal correspondence by certified mail. Max-George also admits that he often sent and received his legal correspondence under the names of fellow inmates. Max-

George has not alleged a chronology of events from which retaliation may be plausibly inferred. Max-George's conclusory allegations are insufficient. There is no basis to infer a causal connection between his exercise of his constitutional right and the alleged retaliatory act. Max-George's retaliation claim lacks merit and is dismissed.

## V.    The Claim Based on an Inadequate Grievance Procedure

Max-George alleges civil-rights violations from the failure to resolve the grievances Max-George's filed. An inmate does not have a constitutionally protected liberty interest in having grievances resolved to his satisfaction. There is no due process violation when prison officials fail to do so. *Geiger v. Jowers,* 404 F.3d 371, 373-74 (5th Cir. 2005); *see also Edmond v. Martin, et al.,* slip op. no. 95-60666 (5th Cir. Oct. 2, 1996) (unpublished) (prisoner's claim that a defendant "failed to investigate and denied his grievance" raises no constitutional issue); *Thomas v. Lensing, et al.,* slip op. no. 01-30658 (5th Cir. Dec. 11, 2001) (unpublished) (same). Moreover, Max-George's own pleadings show that Sergeant Smith investigated the grievances and provided timely responses. On more than one occasion, Sergeant Smith investigated Max-George's complaint of mail tampering and explained that correspondence could only be tracked if it was sent using certified mail. There is no basis to this claim, and it is dismissed.

## VI.    The State Claims

"[A] federal court should consider and weigh in each case, and *at every stage of the litigation,* the values of judicial economy, convenience, fairness, and comity in order to decide whether to exercise jurisdiction over a case brought in that court involving pendent state-law claims." *Carnegie-Mellon Univ. v. Cohill,* 484 U.S. 343, 350 (1988). The Supreme Court has instructed that "if the federal claims are dismissed before trial, . . . the state claims should be

dismissed [or remanded] as well." *United Mine Workers of Am. v. Gibbs,* 383 U.S. 715, 726 (1966) ("Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law.").

A federal district court has supplemental jurisdiction over state-law claims that are so related to the federal claims that they form part of the same case or controversy. 28 U.S.C. § 1367(a). The district court may decline to exercise supplemental jurisdiction over state-law claims after dismissing the federal claims. *St. Germain v. Howard,* 556 F.3d 261, 363-64 (5th Cir. 2009) (citing 28 U.S.C. § 1367(c)). Generally, when all federal claims have been dismissed at an early stage, a district court should dismiss any pendent state-law claims, without prejudice. *Wong v. Stripling,* 881 F.2d 200, 204 (5th Cir. 1989). Max-George's § 1983 claims have been dismissed. The court declines to exercise supplemental jurisdiction over the state-law claims he asserts. Max-George's state-law claims are dismissed without prejudice.

## VII.   Conclusion

The action filed by Cecil Max-George (TDCJ-CID Inmate #1649987) lacks an arguable basis in law. His federal claims are dismissed with prejudice. The state-law claims are dismissed without prejudice. Max-George's motion for service of process, (Docket Entry No. 21), is denied. Max-George's motion for ruling on his more definite statement, (Docket Entry No. 22), is denied. Any remaining pending motions are denied as moot.

The TDCJ-CID must continue to deduct twenty percent of each deposit made to Max-George's inmate trust account and forward payments to the court on a regular basis, provided the account exceeds $10.00, until the filing fee obligation of $350.00 is paid in full.

The Clerk will provide a copy of this order by regular mail, facsimile transmission, or e-mail to:

(1)      the TDCJ - Office of the General Counsel, Capitol Station, P.O. Box 13084, Austin, Texas, 78711, Fax: 512-936-2159;

(2)      the Inmate Trust Fund, P.O. Box 629, Huntsville, Texas 77342-0629, Fax: 936-437-4793; and

(3)      the District Clerk for the Eastern District of Texas, 211 West Ferguson, Tyler, Texas 75702, Attention: Manager of the Three-Strikes List.

SIGNED on June 22, 2012, at Houston, Texas.

_____
Lee H. Rosenthal
United States District Judge